## FORNEY *v.* The COMMONWEALTH.

The lien of the commonwealth on the estates of sureties of public officers, after a settlement of their accounts by the auditor-general, extends throughout the state. The act of 1827, requiring a certificate of such balances to be transmitted to the proper counties, &c., not extending to the sureties, but to the principal debtors only.

This lien is payable out of the proceeds of the sureties' land sold under a decree of the Orphans' Court for payment of debts.

IN error from the Common Pleas of Lancaster.

Case stated. Hambright was a collector of tolls for the commonwealth, during the years 1841–2–3. Several bonds were executed, in each of these years, by Reitzel and others, as his sureties. Hambright was a defaulter each year; and in March, 1844, a general settlement of his account was made, and a certificate duly transmitted to the prothonotary of the Common Pleas of Lancaster, by whom it was entered as a lien against Hambright's estate, April 11th, 1844: but there was no entry against the sureties. On the 13th April, Reitzel mortgaged his land in Lancaster county. Several actions were brought by the commonwealth, on the bonds of 1841–2–3, and judgments recovered. The judgment on the bond of 1843 had been paid and released. Reitzel died insolvent, in 1848, and his land was sold by the Orphans' Court for payment of debts. The question submitted was, whether the commonwealth had a lien on the fund arising from the sale of Reitzel's estate, paramount the mortgage and other creditors, from the date of the settlement, in March, 1844.

The court (LEWIS, P. J.) gave judgment for the commonwealth.

*Reynolds* and *Franklin*, for plaintiff in error.—The policy of this state has always been to discourage secret liens: 2 Barr, 72. The sureties of a public officer are not his securities within the meaning of the act of 1811. If they are, the act of 1827 extends to them; and, for want of compliance with those requisites, the land is not bound: 4 Barr, 164. These acts are in *pari materiâ*, and the object of the latter includes sureties as well as principal debtors. The state cannot, by her prerogative, acquire a lien, unless the forms of law are complied with; that only prevents a loss, by the remissness of the public officers, of one already acquired. This lien, if it existed, was discharged by the recovery on the last bond, and the discharge of the judgment. If not, the Orphans' Court sale did not discharge it: 3 Penna. 368; 4 W. 54.

*Fordney* and *Frazer*, contrà.—The act of 1827 does not extend to sureties, and the lien remains under the act of 1811. The sale was a judicial one, and hence this lien was discharged from the land, and turned upon the proceeds: Act 1794, 3 Sm. 150 ; 1832, §31, p. 190 ; 1834, §20, p. 76 ; 5 Barr, 242 ; 1 Pa. 96 ; 4 R. 440.

*May* 27. BURNSIDE, J.—The 12th section of the act of 30th March, 1811, entitled, "An act to amend and consolidate the several acts relating to the settlement of the public accounts and the payment of the public money," (Dunl. 287, 5 Sm. 228) provides, that the amount or balance of every account settled, agreeably to this act, due to the commonwealth, shall be deemed and adjudged to be a lien, from the date of the settlement of such account, on all the real estate of the person or persons indebted, and on their *securities* throughout the commonwealth. The word securities, referred to in this clause of the section, refers to, and means the person or persons who have bound themselves as security or bail, for any public officer, to the commonwealth, that he will execute and perform all the duties of the office or appointment with fidelity.

Reitzel, with Keller and Shaeffer, were in 1841, 1842, and 1843, the bail of Frederick Hambright, collector of rail-road tolls at Lancaster, and gave bonds each year, with the same persons as sureties. The auditor-general settled Hambright's accounts quarterly. After his removal from office by the canal commissioners, being a public defaulter, on the 25th March, 1844, his accounts were duly settled by the auditor-general, and approved by the state treasurer. The balance found against him, the auditor-general caused to be entered of record, agreeably to the provisions of the 4th section of the act of 16th April, 1827 (P. L. 471 ; Purd. 978). This act requires the auditor-general to transmit to the prothonotaries of the respective counties, to be by them entered of record, certified copies of the liens which may hereafter arise by virtue of the 12th section of the act of 30th March, 1811.

It is contended that the commonwealth has no lien against the estate of Reitzel, because there was no entry or notice of the lien entered, on the docket of the Common Pleas of Lancaster county, where he resided, and where his estate was situated. The answer to that is, that the lien is made and created by the act of 1811, against the bail of the officer, the *moment* the settlement is made on the books of the auditor-general. This is so expressly declared by the act of 1811, and the act of 1827 makes no change in this particular, and only authorizes the settlement to be certified by the

auditor-general, and entered of record against the principal. The act of 1827, which must be taken and considered in *pari materiâ* with the act of 1811, makes no change in the former act, and does not mention or take notice of the sureties. The want of notice of the lien in the respective counties where the delinquent officer's estate was situated, under the act of 1811, was no doubt felt as an evil, and to remedy this to some extent, the legislature, in 1827, directed the settlement to be certified against the delinquent officer to the prothonotary's docket of the proper county. The construction of the act of 1827 came before this court in the case of Wilson *v.* The Comth. 4 Barr, 164. There, it was held that the commonwealth has no lien for the balance of the account settled with a brigade inspector, in preference to other lien-creditors, under the act of 1811, unless a certified copy of the account has been transmitted to the prothonotary of the county where the inspector resides, and by him entered of record, according to the provisions of the act of 1827. The court said that both these acts were to be taken together. The act of 1827 made no allusion to bail now created, nor made any change in the lien created by the act of 1811. It only made it the duty of the auditor-general to transmit and cause the lien to be filed in the county where the officer had land; no doubt for the purpose of notice.

It is generally known in a county who are the bail of public officers. When the lien is filed against the officer, it goes a great way to give notice to those who have money dealings with that officer, to be on their guard, and leads to the inquiry, who are his bail?

But there are obvious reasons why the auditor-general was not directed by law to certify defaulting officers' accounts against their bail. A public officer can only certify when the evidence is in his office; and the only bonds of public officers now by law filed in the office of the auditor-general, are those of collectors of tolls on the public works, and registers of wills, for the faithful collection of the collateral inheritance tax. Neither of these sources of revenue existed, or were thought of, in 1811. The bonds of the prothonotaries and clerks of the several courts; bonds of registers, for the safe-keeping and delivery of their records and papers to their successors; bonds of recorders of deeds; bonds of superintendents and supervisors on the railroads and canals, are lodged in the office of the secretary of the commonwealth.

It is respectfully submitted to the legislature to have all bonds, especially those for the collection and disbursement of public money,

transferred to the office of the auditor-general, and to add to his duties, when he certifies the settlement against the principal, to certify against the bail also.   Such a change would place all citizens of the commonwealth on a proper footing as to notice, and take from the liens created by the act of 1811, all their odiousness as secret liens.

There is no error in the result of the learned judge's opinion.

The judgment is affirmed.